# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| Nationwide Telecom Incorporated<br><br>*Plaintiff*<br><br>v.<br><br>Dollar Phone Corp.<br><br>*Defendant.* | Civil Action No. 16-CV-02495-MSK-MJW |

## DECLARATION OF CHRIS ZAMBITO

I, Chris Zambito, do hereby declare, pursuant to 28 USC § 1746 and subject to penalties of perjury, that the following facts are true and correct to the best of my knowledge, information and belief:

1. I am currently, among other things, a Special Projects Manager for Non-Party Dollar Phone Services, Inc., a subsidiary of Defendant Dollar Phone Corp. I have been employed by, contracting for, or otherwise acting as a representative of and on behalf of either Dollar Phone Services, Inc. or other wholly-owned subsidiaries[1] of Dollar Phone Corp. in various capacities since May, 2008. I am making this declaration in support of Defendant Dollar Phone Enterprise Inc.'s motion to dismiss in its entirety, or, in the

---

[1] In addition to my current work for Dollar Phone Services, Inc., I have also worked in various capacities for the now-defunct Atlas Trading Conglomerate, Inc. (formerly known as Dollar Phone Access, Inc.).

alternative, transfer this action to the United States District Court for the Eastern District of New York pursuant to 28 USC § 1404(a).

2. In my capacity as a Special Projects Manager, I am frequently tasked with investigating the circumstances leading up to any unusual or unexpected situations which may arise throughout the normal course of business, as well as provide ongoing advice and recommendation for expedient resolution of such matters. An example of the types of projects and cases in which I would be called upon to provide support as needed include but are not limited to investigating and proactively defending against suspected fraudulent activity on the company's network, working with law enforcement to assist whenever a non-standard or complicated subpoena duces tecum is served upon the company[2] and investigating the narrative and facts behind any litigation which the company may become involved, whether that be as plaintiff, defendant or witness. Additionally I am responsible for the drafting, review and approval of all legal agreements and contracts with our clients and vendors as well as working closely with our in house and retained counsel to provide paralegal service and research as needed.

3. On July 7, 2016, at least two separate emails were sent to the email addresses of random individuals and groups of individuals at Dollar Phone Corp.[3] These emails

---

[2] As is the case with all telecommunications providers, it is fairly common for Dollar Phone Corp. or one of it's subsidiaries to receive subpoenas on a regular basis from law enforcement, requesting the identities of or information concerning an end user or customer of the company. Most subpoenas received by Dollar Phone Corp. or it's subsidiaries are generic and uncomplicated in their nature and are handled by first line personnel. Occasionally, a more complicated or urgent law enforcement investigation results in us receiving a subpoena, in which case it usually will be directed to myself for handling. An example of one such occasion would be during the investigation into the Boston Marathon Bombing in 2013. The early FBI investigation suggested that international calls made by the suspects or associates of the suspects may have passed through the VoIP switches and other telecommunications equipment operated by Dollar Phone Corp. pursuant to Reciprocal Carrier Service Agreements Dollar Phone Corp. entered into with various international telecommunications carriers. In consideration of the urgency of the situation and need for the FBI to quickly gather the evidence it needed due to the unique circumstances of the case, I worked with multiple FBI Special Agents in both the Boston and Orlando field offices to expedite responses to subpoenas they issued, in some cases providing responses within minutes of being served, and to assist them in understanding and interpreting the raw technical data produced.

[3] One employee of former Defendant Dollar Phone Enterprise, Inc., Elisha Hisiger, was included in the "Cc" line of one of the emails sent.

were immediately forwarded to myself for analyzing, investigation and recommendation of a course of action.

4. The emails consisted of a message from someone identifying himself as "Dave Abadi" identifying himself in one as the "CEO" of "Nationwide Telecom Inc" and in the other as "GM" of "Nationwide Telecom Inc." They were written in all capital letters and contained numerous spelling and grammar errors, plus two file attachments, the first being a more professional-appearing letter, "*NWT v. DollarPhone Legal Action.xps*" (Addressed to Defendant Dollar Phone Enterprise, Inc.) from Mr. Abadi as well as a Microsoft Excel spreadsheet file "*NWT Fraud CDRs.xlsx*". A true copy of these emails and associated file attachments is attached herewith as Exhibit "A".[4]

4. The emails from Mr. Abadi, identified as a "COURTESEY NOTICE PRIOR TO OUR LEGAL FILING" requested that the recipient "TAKE URGENT ACTION" "WITH SEIZE AND FREEZE OF ANY AND ALL PAYMENTS" against some unspecified "PARTNER" of the recipient, as well as demanding contact information for the recipients' "ACCOUNTS PAYABLE/TREASURER AND FORWARD TO PROEPR DEPARTMENT FOR IMMEDIATE ACTION." Additionally one of the emails also stated that "THIS IS BEING PURSUED WITH CRIMINAL INVESTIGATION."

5. The attached letter, also from Mr. Abadi, "*NWT v. DollarPhone Legal Action.xps*" and addressed to Dollar Phone Enterprise, Inc. appeared to suggest that a client or vendor of the Dollar phone Enterprise, Inc. had somehow "hacked" Mr. Abadi's

---

[4] I am only attaching the first five and last five printed pages of "*NWT Fraud CDRs.xlsx*". The attachment, if it were to be printed in it's entirety, would consist of 7,152 pages containing 168,061 rows of data. The complete file will be made available in either printed or electronic format upon request of the Court.

"CenturyLink Trunk by expropriating our IPs" and resold the "hacked network VOIP route" to Defendant, who then allegedly sent international calls "from your VOIP switch IPs".[5] Mr. Abadi further demanded that the Defendant "seize and freeze urgently any and all payments to your client of the record who has sold and billed your company abusing our VOIP route for the attached CDRs."

6. The attached Microsoft Excel spreadsheet, "*NWT Fraud CDRs.xlsx*" contained 168,061 rows of data corresponding to calls or calls attempts made between June 1, 2016 and June 20, 2016.

7. I quickly determined that the calls in question were sent by Dollar Phone Corp. to its vendor, Non-Party FM & Company (UK) Limited, pursuant to a Reciprocal Carrier Service Agreement between Dollar Phone Corp. and FM & Company (UK) Limited.[6]

8. I then reported my findings to personnel of both Dollar Phone Corp. and Dollar Phone Enterprise, Inc. advising them that the letters, which mis-identified Dollar Phone Enterprise, Inc. as the party with whom Mr. Abadi had a grievance, appeared to be intended for Dollar Phone Corp., whom the emails were addressed to. I also recommended that Dollar Phone Enterprise, Inc. should not respond to Mr. Abadi and that Dollar Phone Corp. should be the ones who handled the situation.

---

[5] Dollar Phone Enterprise, Inc. does not own or operate any telecommunications equipment or "VOIP switches" of any kind which would allow them to either send or receive traffic to or from any party, including the Plaintiff. Dollar phone Enterprise, Inc.'s business focus is on the marketing, promotion and sales of prepaid calling card and "pinless" calling card and other similar products to assorted private and public clients and does not engage in, manage or operate it's own telecommunications infrastructure. Dollar phone Enterprise, Inc. contracts with independent third- parties, including Dollar Phone Corp. for all it's telecommunications needs including wholesale and retail minutes of international termination. *Declaration of Abe Greenfield.*

*6. Declaration of Ben Zelmanowitz ¶6.* I have personal knowledge of the relationship between Dollar Phone Corp. and FM & Company (UK) Limited as well as the Reciprocal Carrier Service Agreement executed between the parties. The agreement was drafted by myself in 2013 and I was responsible for reviewing and approving all revisions during the negotiation process as well as approving and certifying the final version which was ultimately executed by the parties.

9. I then recommended to Sam Klinger, Executive Vice President for Dollar Phone Corp., that he have the account manager assigned to FM & Company (UK) Limited contact them and demand an explanation as to why Mr. Abadi and Nationwide Telecom, Inc. was sending accusatory letters to Dollar Phone Corp, addressed to Dollar Phone Corp.'s client, Dollar Phone Enterprise, Inc, regarding traffic Dollar Phone Corp. purchased from and sent to FM & Company (UK) Limited.

10. Mr. Klinger afterwards updated me, following Mr. Zelmanowitz's discussion with FM & Company (UK) Limited, stating that it appeared that Mr. Abadi's emails and letter to Defendant were the result of a dispute between the Plaintiff and FM & Company (UK) Limited[7]. I then advised Mr. Klinger that I would continue to research and investigate the matter and that for the time being I recommended that neither Dollar Phone Corp. nor Dollar Phone Enterprise, Inc. respond or take any action, pending expected follow up contact from Plaintiff's attorney which should be expected as per Mr. Abadi's letter.

11. On October 13, 2016, I was informed that Plaintiff had filed a lawsuit against Dollar Phone Enterprise, Inc.[8] in the United States District Court for the District of Colorado and was tasked with working with Plaintiff's attorney to provide any research and assistance needed.

12. Upon thorough review of Plaintiff's complaint and each claim made therein, and after conducting extensive follow up research into facts stated therein, I came to the

---

[7] *Declaration of Ben Zelmanowitz ¶16-17*

[8] Plaintiff has since amended their Complaint and has now named Dollar Phone Corp. as the sole Defendant.

conclusion that, besides the wrong party being named as Defendant in the action[9], Plaintiff's suit was frivolous in nature and contained many false statements and claims that are not supported by, or are in fact contradicted by the available evidence.

13. Dollar Phone Enterprise, Inc. does not own any telecommunications infrastructure or in any way possess the capability[10] to either "obtained access to Nationwide's Switch Internet Protocol ("IP") address", or to in some way have "loaded"…"Nationwide's international SIP Trunk line"…"with international calls from Dollar Phone's VoIP switch and Internet Protocol ("IP") addresses", or "to access Nationwide's wholesale partition switch" and "then accessed the following, but not limited to, CenturyLink's IP addresses"[11].

14. On November 17, 2016 I queried Dollar Phone Corp.'s switch records and discovered that between June 1, 2016 (June 2, 2016 GMT for the terminating recipient, FM & Company (UK) Limited) and June 22, 2016, the date the last call was attempted, Dollar Phone Corp. had only directed traffic towards **one** of Plaintiff's IP addresses that was listed in Paragraph 19 of the Complaint, 65.112.165.7, a total of 157,517 call attempts in total. No calls were transmitted or even attempted to 65.112.165.8, 65.112.165.9, 65.112.165.13, or 65.112.165.15. A true copy of the results of these

---

[9] *Id*

[10] *Declaration of Abe Greenfield ¶8-9*

[11] *Nationwide Telecom Incorporated. v. Dollar Phone Corp., 16-cv-2495-MSK-MJW, Dkt 1, Page 2 ¶15-20*

queries and the first five and last five pages of the Call Detail Records (CDRs) for calls sent to 65.112.165.7 is attached herewith as Exhibit "B".[12]

15. At the same time, I also queried Dollar Phone Corp.'s switch records to determine if any call attempts were sent to the six "CenturyLink IP addresses" as claimed in Paragraph 20 of the Complaint and determined that no calls were ever even attempted to those IP addresses. A true copy of the results of these queries is attached herewith as Exhibit "C".

16. I then took a closer look at Mr. Abadi's July 7, 2016 letter and "*NWT Fraud CDRs.xlsx*" CDR file and noted that while the CDR file did not specify which of Nationwide's IP addresses allegedly received the calls from Defendant[13], they did specify which of Defendant's supposed IP addresses allegedly originated the calls. Contradictory to Plaintiff's claim in Paragraph 18 of the Complaint that "The following Dollar Phone VoIP and IP were used to access Nationwide's wholesale partition switch: 216.48.184.132; 216.48.184.133; 216.48.184.52; 216.48.184.53." Mr. Abadi's "*NWT Fraud CDRs.xlsx*" CDR file indicates that of the 168,060 the calls in dispute received by the plaintiff between June 1, 2016 and June 20, 2016, 168,058 calls originated from Dollar Phone Corp.'s 216.48.184.52 while only two calls on June 10, 2016[14] originated from 216.48.184.53.

---

[12] As with the example of CDRs provided by Mr. Abadi in his July 7, 2016 email in my Exhibit "A" attachment, I am only including the first and last five pages of the file. The complete file will be made available in either printed or electronic format upon request of the Court.

[13] Although Mr. Abadi's CDR file did not specify which of his IP addresses received the calls, his July 7, 2016 letter did specify that calls were only received on his 65.112.165.7, which is consistent with the results of my queries of Dollar Phone Corp.'s CDR records.

[14] "*NWT Fraud CDRs.xlsx*" Rows 143,091 & 143,092

17. As part of my investigation into this matter, Ever since Mr. Abadi's July 7, 2016 emails, I had several conversations with Mr. Ben Zelmanowitz, Senior Account Manager at Dollar Phone Corp. responsible for overseeing the relationship with FM & Company (UK) Limited regarding the circumstances behind this matter. As a result of my discussions with Mr. Zelmanowitz and review of documentation in his possession as well as further research on my part, I discovered an additional peculiarity which lends further doubt to the credibility of Nationwide's claim. Contradictory to Plaintiff's assertion, ostensibly to their surprise, that Defendant "accessed without authorization on June 2, 2016"…"Nationwide's CenturyLink International SIP Trunk T1 line", Dollar Phone Corp. actually began sending traffic (per the instructions of FM & Company (UK) Limited in March, 2015[15]) to three of Plaintiff's IP addresses back in April, 2015.

18. I then repeated my earlier queries of Dollar Phone Corp.'s switch records looking for any traffic sent to the IP addresses stated by Plaintiff in Paragraphs 19 and 20 of the Complaint, this time searching for calls starting February 1, 2015 until June 1, 2016. My queries revealed that Dollar Phone Corp. had, during this time period, in fact sent 275,344 call attempts to 65.112.165.7 (first call April 3, 2015), 177,204 call attempts to 65.112.165.8 (first call April 5, 2015), and 223,983 call attempts to 65.112.165.15 (first call April 5, 2016). No call attempts have ever been sent to 65.112.165.9, 65.112.165.13, or any of the six "CenturyLink IP addresses". A true copy of the results of these queries is attached herewith as Exhibit "D".

19. Further adding doubt to the credibility of the allegations in Plaintiff's complaint, My research revealed that Plaintiff's stated IP addresses have actually been

---

[15] *Declaration of Ben Zelmanowitz ¶6*

**sending calls towards** Dollar Phone Corp.'s "VOIP switch IPs" **since before** Dollar Phone Corp. started sending calls towards Plaintiff's IP addresses, and continued sending calls towards Dollar Phone Corp.'s "VOIP switch IPs" until June 29, 2016, **a full nine days after** calls stopped being sent to Plaintiff's IP addresses. My queries, similar to the ones I ran earlier, and this time searching for calls which may have been sent **from** Plaintiff's IP addresses between October 15, 2013 and November 18, 2016, revealed a total of 22,224 calls originating from 65.112.165.9 (first call April 1, 2015, final call June 24, 2016), 24,685 calls originating from 65.112.165.13 (first call April 1, 2015, final call October 31, 2015), 145,607 calls originating from 65.112.165.7 (first call April 21, 2015, final call June 29, 2016), 18,247 calls originating from 65.112.165.8 (first call April 21, 2015, final call November 12, 2015) and 39,302 calls originating from 65.112.165.15 (first call April 22, 2015, final call October 22, 2015). A true copy of the results of these queries is attached herewith as Exhibit "E".[16]

20. Further to my investigation into the frivolity of Plaintiff's claim, I also inquired of Dollar Phone Services Inc.'s finance team, who handles Accounts Payable and Accounts Receivable duties for Dollar Phone Corp., whether Dollar Phone Corp. had invoiced and received payment from FM & Company (UK) Limited for VoIP traffic sent **from** Plaintiff's "wholesale switch IP address"es for the time period between April 1, 2015 and June 29, 2016, the time period in which my investigation revealed that Plaintiff's "wholesale switch IP addresses had sent traffic to Dollar Phone Corp. for

---

[16] I am not attaching any CDR files resulting from these queries to this Declaration. Those files will, of course, be made available in either printed or electronic format upon request of the Court.

termination. Dollar Phone Services, Inc.'s finance team advised me that Dollar Phone Corp. had invoiced FM & Company (UK) for this traffic and those invoices had been paid.[17]

21. I then inquired of Dollar Phone Services Inc.'s finance team whether FM & Company (UK) Limited had invoiced and received payment from Dollar Phone Corp. for VoIP traffic sent towards Plaintiff's "wholesale switch IP address"es for the time period between April 1, 2015 and June 20, 2016, the time frame in which my earlier research indicated that Dollar Phone Corp. had sent traffic to one or more of Plaintiff's stated IP addresses, including the month of June, 2016 at the heart of Plaintiff's complaint.. Dollar Phone Services, Inc.'s finance team advised me that FM & Company (UK) Limited had invoiced Dollar Phone Corp. for this traffic and those invoices had been paid.[18]

22. Dollar Phone Services Inc.'s finance team also further advised and produced documentation for me showing that someone at Nationwide Telecom Incorporated had been included on numerous billing emails between FM & Company (UK) Limited and Dollar Phone Corp., further bring into question the veracity of Plaintiff's claim.[19]

23. On November 10, 2016, both myself and Mr. Chona Gewirtz, counsel for then-Defendant Dollar Phone Enterprise Inc.(and new Defendant Dollar Phone Corp.) had a call with Ms. Aimee Bove, counsel for Plaintiff in hopes of settling this case amicably, thereby sparing all parties the expense of protracted litigation. Among the topics of discussion, was why the Plaintiff filed suit against Dollar Phone Enterprise, Inc.

---

[17] *Declaration of Aaron Schulman*

[18] *Id*

[19] *Id*

and not Dollar Phone Corp., the party who had actually sent calls to Plaintiff's IP addresses, the VoIP traffic at the heart of this dispute. Ms. Bove stated that Plaintiff's research indicated that the IP addresses mentioned in Paragraph 18 of the Complaint were registered to the named Defendant, Dollar Phone Enterprise, Inc. On November 17, 2016 Ms. Bove again stated, in a follow-up email conversation between herself and Mr. Gewirtz (which Mr. Gewirtz "blank copied" me), attached herewith as Exhibit "F", that "The IP addresses are listed under the name I sued." I was a bit surprised to hear this because to the best of my knowledge those IP addresses are and always were registered to Dollar Phone Corp. After our call, I verified that the four IP addresses in Paragraph 18 of the Complaint are in fact registered to Dollar Phone Corp.[20] just like I thought. A true copy of this registration data is attached herewith as Exhibit "G".

24. Additionally, on this same call with Ms. Bove, in hopes that she would conduct due diligence and properly investigate the serious claims alleged by her client, we brought to her attention that her client's IP addresses had in fact been sending traffic **towards** Dollar Phone Corp. for a longer period of time than Dollar phone Corp. had been sending traffic towards Plaintiff's IP addresses, as well as shared with her the fact that such exchange of traffic was the result of an agreement between Dollar Phone Corp. and FM & Company (UK) Limited who in turn was a client of the Plaintiff. Ms. Bove instead suggested that perhaps Dollar Phone Enterprise, Inc.[21] had also been hacked and was also a victim.

---

[20] http://whois.domaintools.com/216.48.184.132 , http://whois.domaintools.com/216.48.184.134 , http://whois.domaintools.com/216.48.184.52 , http://whois.domaintools.com/216.48.184.53

[21] Plaintiff has since amended their Complaint and has now named Dollar Phone Corp. as the sole Defendant.

25. On November 22, 2016, I had a call with Mr. Mohammed Tarkesh Dooz, Director of FM & Company (UK) in hopes of better understanding why Plaintiff was making the baseless allegations it was against Dollar Phone Enterprise, Inc.[22] Mr. Tarkesh Dooz advised me that the Plaintiff, by way of it's President Mr. Dave Abadi offered to provide a Hosted Partition softswitch system to FM & Company (UK) Limited.[23] As part of this service, FM & Company (UK) Limited would have use of Voice Over Internet Protocol (VoIP) servers in Nationwide's office in Colorado, and Nationwide would assign Internet Protocol (IP) addresses to FM & Company (UK) Limited to provide to VoIP carriers with whom they interconnect, including Dollar phone Corp.

26. Mr. Tarkesh Dooz further stated that FM & Company (UK) Limited accepted Nationwide's offer was subsequently initially assigned nine IP addresses to give VoIP carriers with whom they interconnect. Included in these assigned addresses were 65.112.165.7, 65.112.165.8 and 65.112.165.13. Mr. Tarkesh Dooz forwarded me a copy of the emails, (a true copy of which I am attaching herewith as Exhibit 'H"), in which Mr. Abadi at Nationwide assigned FM & Company (UK) Limited those IP addresses and instructed FM & Company (UK) Limited to have their customers and vendors start directing traffic to, and allowing traffic from these IP addresses.

27. Mr. Tarkesh Dooz further stated to me that in February, 2015, due to complaints he was receiving about call quality from his retail clients including, among

---

[22] *d*

[23] A description of this service can be found on Nationwide's web site at http://www.nationwidetelecom.net/services/wholesale-switching-partition

others, Dollar Phone Corp., Mr. Abadi provided him a list of seven IP addresses along with instructions on how to load balance the traffic, in order to improve the quality of service for his clients. Included in the seven IP addresses were 65.112.165.13, 65.112.165.9, 65.112.165.7, 65.112.165.8 and 65.112.165.15. Mr. Tarkesh Dooz forwarded me a copy of this email, A true copy of which is attached herewith as Exhibit "I".

28. Mr. Tarkesh Dooz further stated to me that he then requested via email, that Dollar Phone Corp.'s Network Operations Center (NOC)[24] [25] change the configuration in their VoIP servers to allow calls from these IP addresses for wholesale minutes of termination which they sell to FM & Company (UK) Limited, and to also start sending to these new IP addresses (in load balance configuration as instructed by Mr. Abadi in his "Exhibit I" email) calls for wholesale minutes of termination which they purchase from FM & Company (UK) Limited. I then personally went into Dollar Phone Corp.'s NOC's noc@dollarphone.com mailbox and verified that this conversation took place as Mr. Tarkesh Dooz described. A true copy of this email discussion lasting through April, 2015 between Dollar Phone Corp.'s NOC, Mr. Tarkesh Dooz and Mr. Zelmanowitz. is attached herewith as Exhibit "J".

29. After a period of configuration and quality assurance testing in both directions, FM & Company (UK) Limited and Dollar Phone Corp. resumed the reciprocal

---

[24] Dollar Phone Corp's NOC, along with all VoIP switching equipment and other hardware is physically located in and operated out of Piscataway, New Jersey, approximately 30 miles West from New York City. All calls which traverse Dollar Phone Corp.'s network, does so through the equipment in Piscataway.

[25] I am not a member of Dollar Phone Corp.'s NOC, however I do serve in a high-level supervisory and escalation role and thus also have full access to the NOC's noc@dollarphone.com mailbox.

exchange of international minutes of termination[26]. Such traffic continued to be exchanged on a reciprocal basis using these IP addresses until June of 2016.

30. Mr. Tarkesh Dooz further advised me that in June, 2016, FM & Company (UK) Limited became dissatisfied with the service being provided to him by Nationwide and Mr. Abadi. He stated that Nationwide was abusing the FM & Company (UK) Limited partition and was sending Nationwide's own VoIP traffic to FM & Company (UK) Limited's interconnect partners (including Dollar Phone Corp.) via the IP addresses that were allocated to FM & Company (UK) Limited, resulting in FM & Company (UK) Limited being charged. He further stated to me that he then decided to relocate the VoIP Servers and hosting to a new provider located in Germany. On June 24, 2016 he notified Dollar Phone Corp. to change the IP addresses programmed in their VoIP servers for traffic moving in both directions to the new IP address in Germany. A true copy of this email discussion between Dollar Phone Corp.'s NOC, Mr. Tarkesh Dooz and Mr. Zelmanowitz is attached herewith as Exhibit "K".

31. Mr. Tarkesh Dooz then informed me that on June 29, 2016, he noticed that traffic FM & Company (UK) Limited was trying to send Dollar Phone Corp. from his new IP address was failing and he realized that Dollar Phone Corp. had only made the change for traffic being sent from themselves to FM & Company (UK) Limited, but that they were still allowing traffic to be sent to them from the old IP addresses which had up until June 24 been assigned to FM & Company (UK) Limited by Mr. Abadi. He stated that he urgently brought this matter to both Mr. Zelmanowitz's and Dollar Phone NOC's attention and they promptly removed the former IP addresses from their servers and

---

[26] *Declaration of Ben Zelmanowitz*

correctly started allowing traffic from FM & Company (UK)'s new IP address in Germany to send traffic.[27]

32. On January 3, 2017, as part of a required conference prior to filing Dollar Phone Corp.'s Motion to Dismiss Nationwide's complaint, Dollar Phone Corp.'s attorney, Mr. Chona Gewirtz, contact Ms. Bove and advised her of Dollar Phone Corp's intention and position that the complaint was improper due to a lack of jurisdiction. Ms. Bove replied, erroneously stating that jurisdiction was proper due to, among other reasons '..my understanding that Dollar Phone Corp's products are being sold in Colorado" and that "Dollar Phone Corp does business in Colorado as evidenced by call detail record File." As backup to her claim, Ms. Bove pasted in the email a list of 1,866 calls which purportedly originated from telephone numbers within Colorado. Mr. Gewirtz forwarded me this email asking me to take a look at this information and to let him know my thoughts on the matter. A true copy of this email from Ms. Bove to Mr. Gewirtz, forwarded to myself along with my response and findings is attached herewith as Exhibit "L."

33. After several hours of investigation, I determined that while the calls did in fact originate from within Colorado as alleged by Ms. Bove, the calls were not placed by customers of Dollar Phone Corp. The calls were in fact placed by customers of carriers with whom Dollar Phone Corp interconnects and sells minutes of wholesale termination

---

[27] I verified the noc@dollarphone.com email inbox that this conversation took place exactly as Mr. Tarkesh Dooz stated. I am not attaching a copy of this as an exhibit since Mr. Zelmanowitz already has included this discussion as Exhibit "G" to his declaration.

to[28]. A true copy of the "Bove_Email_CDR.xls" spreadsheet I sent back to Mr. Gewirtz containing the results of my research is attached herewith as Exhibit "M."[29]

I declare under penalty of perjury that the foregoing is true and correct.

                                           ____/s/_____
                                           Chris Zambito

Executed on January 3, 2017

---

[28] See: *Declaration of Sam Klinger* and *Declaration of Abe Greenfield*

[29] I apologize for the small font in Exhibit "M Tab 4" but I felt it is vital to include the entire spreadsheet an d the data it contains on single pages rather than having each tab split into multiple pages. I will of course provide the Court upon request, an email copy of this Excel spreadsheet

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been sent, via electronic mail, to the attorneys of record referenced below this 4th day of January, 2017:

Aimee M. Bove
BKN Murray LLP
6795 E. Tennessee Ave, Ste. 330
Denver, Colorado 80224
Phone: (303) 758-5100
Fax: (303) 758-5055
Email: above@bknmurray.com
ATTORNEY FOR PLAINTIFF NATIONWIDE TELECOM INCORPORATED

Dated: January 4, 2017

/s/ Edward N. Gewirtz