## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:16-cv-02495-MSK-MJW

**NATIONWIDE TELECOM INCORPORATED**,

Plaintiff,


v.


**DOLLAR PHONE CORP.**

Defendant.

---

### CORRECTED RESPONSE TO MOTION TO DISMISS OR CHANGE VENUE

---

**COMES NOW**, Nationwide Telecom Inc., by and through its undersigned attorneys, BKN Murray LLP, and respectfully submits the following Corrected Response to Motion to Dismiss or Change Venue.  Plaintiff contends there is personal jurisdiction over Plaintiff pursuant to the Colorado Long Arm Statute and Due Process.  Likewise venue is appropriate before this court.

1. **There is Personal Jurisdiction**

    A. <u>Burden of Proof:</u> Plaintiff concedes that it bears the burden of establishing jurisdiction over the Defendant.

    B. <u>Elements:</u> Plaintiff agrees with Defendants' identification of the elements for personal jurisdiction when the traditional bases for personal jurisdiction do not exist.

    C. <u>Dollar Phone Corp. has sufficient minimum contacts to satisfy Due Process</u>

I. *Colorado Long Arm Statute and Due Process Analysis*

a. <u>*Colorado Long Arm Statute Applies*</u>

Defendant's tortious conduct meets the threshold standard. In enacting the Long Arm Statute., "the Colorado legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clauses of the United States and Colorado Constitutions." *Fleet Leasing, Inc. v. District Court In and For City and County of Denver*, 649 P.2d 1074 (1982) [internal citations omitted]. A party asserting personal jurisdiction over a defendant under the Long Arm Statute must make a prima facie showing of threshold jurisdiction in its Complaint. *Id.* ("Threshold jurisdiction exists when it is demonstrated that tortious conduct initiated in another state ultimately caused injury in Colorado and that requiring a defense to the tort action in this state would be consistent with due process of law.").

In its Amended Complaint, Plaintiff averred it is a worldwide telecommunications company based in Colorado providing international telephone services to its clients. (Amended Complaint, ¶¶1, 10, Docket # 10). In Colorado, Plaintiff contracted with Qwest Communications, now Century Link, for an international SIP Trunk Line. (Docket # 10, ¶¶ 7, 8, 9). Plaintiff buys wholesale bandwidth on CenturyLink's T1 Trunk line to provide international telephone services to its customers. (Docket 10, ¶ 12). Plaintiff has not contracted with, or allowed Dollar Phone Corp. to access its T1 Trunk Line. (Docket #10, ¶ 13). Defendant Dollar Phone Corp. accessed Plaintiff's T1 Trunk Line without authorization causing Plaintiff's Trunk Line to be loaded with calls from Dollar Phone's Voice Over Internet Protocol ("VoIP") route. (Docket #10, ¶ 16) Dollar Phone then improperly resold Plaintiff's network VoIP route to Colorado Consumers for

profit.[1] (**Docket #10**, ¶¶ 16-17, 24). CenturyLink, in Colorado, billed Plaintiff over $65,000.00 for Defendant Dollar Phone's illegal use of the T1 Trunk Line. (**Docket #10**, ¶ 27).

b. *General Jurisdiction*

The Colorado Supreme court in *Croxton & Trench Holding Corp*., 90 F.3d 1523, 1533 (10th Cir.1996) provides, "[g]eneral jurisdiction exists when the defendant's contacts with the forum state are so 'continuous and systematic' that jurisdiction is appropriate even when the claims are unrelated to the defendant's contacts with the forum state." *Id* [internal citations omitted]. Defendant hides behind the illusionary distinction between Dollar Phone Enterprises and Dollar Phone Corp. to support its argument that it "solicits no business, sends no agents to solicit business, does not hold itself out as doing business, does not advertise or have any bank accounts in Colorado. (MTD, Docket #20, p.4)  Instead Defendant asserts "Dollar Phone Corp. from the New York metropolitan area deals only on a wholesale level with clients who are not end users, and thus it is irrelevant that an end user in Colorado though another company that is a customer of Dollar Phone Corp. placed a call. . ." (MTD, Docket #20, p. 3).

The "company that is a customer of Dollar Phone Corp." is Dollar Phone Enterprises.[2] Pursuant to Dollar Phone's website, "Prepaid calling card services are provided by Dollar Phone Enterprise, Inc., and independent distributor of Dollar Phone Corp.  Dollar Phone is a registered trademark of Dollar Phone Corp. and is licensed to its distributors."  The United States Patent and Trademark office defines a Trademark as "a word, phrase, symbol, and/or design that

---

[1] Defendant asserts that Dollar Phone Enterprises, as compared to Dollar Phone Corp., markets and sales the international calling time to Colorado Residents.  Even accepting this argument as true, the unauthorized access of Plaintiff's Trunk Line was by Dollar Phone Corp which it resold for an improper profit.

[2] Dollar Phone Corp.'s address on its bank statements provided by Defendant the same address Dollar Phone Enterprises lists on its website. (Defendant's Exhibit C to MTD, *hereafter* exhibit A; http://www1.dollarphone.com/contact/).

identifies and distinguishes the source of goods of one party from those of others." This is Dollar Phone Corp.'s Trademark:



Dollar Phone Corp. holds itself out as doing business in Colorado by using its trademark to advertise telecommunications services. Indeed a consumer can buy a prepaid calling card printed with the Dollar Phone Corp.'s Trademark throughout Colorado. (Dollar Phone International Pinless calling card front and back, *attached* as Exhibit B). Furthermore, on the back of the Dollar Phone calling card it lists local access numbers in Colorado. (Ex. B). Dollar Phone Enterprises' website, using the Dollar Phone Trademark, makes direct sales to Coloradoans. To counteract this fact, Defendant asserts that a passive website simply making information available cannot confer general jurisdiction.

Dollar Phone's website is not just merely informative. A Colorado consumer can buy telecommunications services originating from Dollar Phone Corp. through its website. http://www1.dollarphone.com/dollarphone-pinless/. This is distinguishable from Defendant's reliance on *Boppy Co.,* v. *Luvee Products Corp.,* No. 04-MK-320 (OES), 2004 WL 2608265 at *4-5 (D.Colo. May 25, 2004). In *Boppy Co,* Luvee only sold its product to Coloradoans on its website and did not sell products at Colorado stores. Contrast with Dollar Phone Corp.'s activities. Here Dollar Phone Corp., through its Trademark, solicited Coloradoans in Colorado stores to buy its product making general jurisdiction is appropriate. *See generally, Helicoptros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 416 (1984).

a. *Specific Jurisdiction*

Dollar Phone Corp. cannot escape jurisdiction by hiding behind its distributor. Specific jurisdiction exists when the defendant has "purposely directed" activities at residents of the forum and the litigation results from alleged injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court in *Watson v. Dillon Companies, Inc*., 615 F.Supp.2d 1221 (D.Colo. 2009) interpreted "purposely directed" to include a company that markets its products in other States <u>through a well established distribution chain.</u>

The Court in *Watson* analyzed *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) to find specific jurisdiction. While *Asahi* states "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the act of placing the product into the stream into an act purposefully directed toward the forum state" it also held additional conduct can establish specific jurisdiction. Id. at 112. The Supreme Court elaborated:

> [additional conduct] may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State<u>, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."</u>

Id. at 107 [emphasis added]

> Hence if the sale of a product ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States …

Id. at 117.

Accordingly, the Court in *Watson* found specific jurisdiction,

> Here, the facts indicate that FONA's actions in creating butter flavorings specifically for companies that make microwave popcorn for sale in grocery stores to consumers means that sale of its products in Colorado is not simply fortuitous, happenstance, or isolated, but arises from its own efforts 'to serve, directly or indirectly, the market for its products in other States' <u>through a well established distribution chain.</u>

*Watson,* 615 F.Supp.2d at 1227. [internal citations omitted][emphasis added].

Drawing all reasonable inferences in favor Plaintiff, it has established a prima facie showing regarding the requisite minimum contacts. Specifically Dollar Phone Corp., without authorization, obtained access to Plaintiff's T1 Trunk Line causing CenturyLink to bill Plaintiff over $65,000.00 dollars in fraudulently obtained telecommunication services. Dollar Phone Corp., through its self-proclaimed distributor, sold these minutes to Coloradoans. (Excel Spreadsheet identifying 1866 calls made from Colorado numbers originated from Plaintiff's improperly obtained Trunk Line, Exhibit C).

Dollar Phone Corp. obtained call minutes with the intent, through the use of Dollar Phone Enterprises, to sale those minutes to Coloradoans. Dollar Phone Corp. purchased wholesale telecommunication services at the national telecommunications market, worked closely with its distributor Dollar Phone Enterprises to provide Coloradoans with call minutes and was aware the Trunk Line would be loaded with calls from Coloradoan consumers it availed itself. Specific jurisdiction is appropriate. *Watson,* 615 F.Supp.2d at 1227.(*citing Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta,* 553 F.Supp. 328 (E.D.Pa.1982)).

D. <u>Personal Jurisdiction does Not Defeat Traditional Notions of Fair Play and Substantial Justice</u>

A Colorado Company was the victim of unauthorized access of its T1 Trunk Line, which resulted in significant damages due to an outstanding CenturyLink bill. The theft was committed

in Colorado.  Defendant Dollar Phone makes considerable money selling its product nationwide, including Colorado.

Dollar Phone Corp. asserts litigating in Denver will be extremely costly.  Even assuming the additional cost of out-of-state litigation, the burden on Defendant will not be significant. Dollar Phone Corp. has been registered as of 1999 and has been in business ever since.  (About Us Screenshot Dollar Phone Website, *hereafter* Exhibit D, "DollarPhone Corp has over 550 Different calling card brands addressing every ethnic market.") Dollar Phone does 250,000,000 min per month of long distance traffic. Figuring an average retail rate of 0.05 that amounts to $12-$15 million monthly revenue. ( Ex. D)

Taking into account the interest of the State in protecting its citizens from misappropriation of telecommunication services and the light burden of out-of-state litigation; application of personal jurisdiction on Dollar Phone Corp. does not violate traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 477.

2. **Colorado Venue is Proper in This Case**

    A. <u>Burden of Proof:</u>  Defendant.

    B. <u>Elements:</u> Plaintiff agrees with Defendants' case law and statutes pertaining to Venue.

    C. <u>28 U.S.C. § 1391 Confers Venue United States District Court - Denver District Court</u>

        a.  28 U.S.C. § 1391(b)(1)

As fully discussed above, the court has personal jurisdiction over the Defendant. Therefore, venue is appropriate under 28 U.S.C. § 1391(b)(1) ("a judicial district in where any defendant resides. . .").

b. 28 U.S.C. § 1391(b)(2)

Venue is also proper under 28 U.S.C. § 1391(b)(2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . " Id. As fully briefed above: (1) Plaintiff contracted with Century Link in Colorado for a wholesale T1 Trunk Line; (2) Dollar Phone Corp. gained unauthorized access to that same T1 Trunk line; (3) Resulting in Plaintiff receiving a CenturyLink bill for over $65,000.00; (5) Dollar Phone, through its distributor sold access to the unauthorized trunk line through calling cards purchased in Colorado stores; and (6) Over 1800 calls using the stolen minutes originated from Colorado.

**3. Venue Should Not Be Transferred to the Eastern District of New York**

A. <u>Burden of Proof:</u> Defendant.

B. <u>Elements:</u> Plaintiff agrees with Defendants' case law and statutes pertaining to Venue Transfer.

Defendant requests a change of venue to the Eastern District of New York. In support of its request it makes unilateral trial strategy decisions. Defendants assert that "[a]ll evidence and sources of proof regarding Defendant's routing of this traffic is in the New York Area." (Docket 20, p, 8) While some witnesses may come from the New York Metropolitan area, an equal amount of witnesses are likely in Colorado. Witnesses in Colorado will include Plaintiff and his employees responsible for the telecommunication operations and CenturyLink employees and representatives. Witnesses from CenturyLink will likely have to testify regarding the sale of Trunk Lines, billing, unauthorized access and investigations into same.

Balancing the factors in *Chrysler Credit*, the weight does not side with the Defendant's request. Plaintiff therefore requests that this Court deny Defendant's request to change venue.

WHEREFORE Plaintiff requests that the Defendant's Motion to Dismiss or Change Venue be denied and for any other relief that this court deems proper.

Respectfully submitted this 24th day of January, 2017.

By:  */s/ Aimee M. Bove*
Aimee M. Bove, #36915
BKN Murray LLP
6795 E. Tennessee Ave, Ste. 330
Denver, Colorado 80224
Phone: (303) 758-5100
Fax: (303) 758-5055
Email: above@bknmurray.com
*ATTORNEY FOR PLAINTIFF*
*NATIONWIDE TELECOM*
*INCORPORATED*

Name and Address of Plaintiff:

Nationwide Telecom Incorporated
6000 E. Evans Avenue
Building 1, Suite 400
Denver, CO  80222

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 24th day of January 2017, a true and correct copy of the foregoing **RESPONSE TO MOTION TO DISMISS OR CHANGE VENUE** was served via ECF/PACER, as follows:

Edward N. Gerwitz
Bronstein, Gewirtz & Grossman LLC
60 East 42nd Street, Suite 4000
New York, NY 10165

<u>/s/*Ilene Dell'Acqua*</u>
BKN Murray LLP