IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02495- MSK-MJW

**NATIONWIDE TELECOM INCORPORATED,**

Plaintiff,

v.

**DOLLAR PHONE CORP.**

Defendant.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The Status Conference is scheduled to occur on Thursday, February 2, 2017 at 9:00 a.m.

Counsel for the parties are as follows:

<u>Counsel for Plaintiff Nationwide Telecom Incorporated ("Nationwide"):</u>

Aimee M. Bove
BKN Murray LLP
6795 E. Tennessee Ave, Ste. 330
Denver, Colorado 80224
Telephone: (30) 758-5100
above@bknmurray.com

Counsel for Defendant Dollar Phone Corp:

Edward N. Gewirtz
Bronstein, Gewirtz & Grossman, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
(212) 697-7296 (facsimile)
Chona@bgandg.com
*Co-Attorneys for Defendant*

Lee M. Kutner
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1850
Denver, CO 80264
303-832-2711 Direct
303-832-1510 Fax
LMK@kutnerlaw.com
*Co-Attorneys for Defendant*

## 2. STATEMENT OF JURISDICTION

Plaintiff asserts that Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a), for diversity between the parties, Colorado Long Arm Statute and due process. Plaintiff Nationwide is headquartered in Denver, CO. Defendant Dollar Phone Corp. is a New York corporation domiciled in and transacting business in Brooklyn, New York. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

Defendant asserts that jurisdiction is improper as jurisdiction is not proper under the laws of the forum state and the exercise of jurisdiction offends due process. Defendant is incorporated in and has its place of business in New York, and has no presence in Colorado nor minimum contacts with Colorado sufficient to make Defendant subject to Colorado jurisdiction. Defendant on January 3, 2017 filed a motion to dismiss for lack of personal jurisdiction, and Defendant's arguments with regard to lack of personal jurisdiction are more fully set fort therein.

## 3. STATEMENT OF CLAIMS AND DEFENSES

To follow are summaries of the claims of the respective Parties to this action. Execution of this Joint Scheduling Report does not constitute agreement by either Party to the factual allegations, claims or legal positions asserted by the other Party.

    a.    **Plaintiff(s):**

Plaintiff is a worldwide telecommunications company based in Colorado providing international telephone services to its clients. In Colorado, Plaintiff contracted with Qwest Communications, now Century Link, for an international SIP Trunk Line. Plaintiff buys wholesale bandwidth on CenturyLink's T1 Trunk line to provide international telephone services to its customers. Plaintiff has not contracted with, or allowed Dollar Phone Corp. to access its

T1 Trunk Line. Defendant Dollar Phone Corp. accessed Plaintiff's T1 Trunk Line without authorization causing Plaintiff's Trunk Line to be loaded with calls from Dollar Phone's Voice Over Internet Protocol ("VoIP") route. Dollar Phone then improperly resold Plaintiff's network VoIP route to Consumers for profit.

As a result CenturyLink billed Plaintiff over $65,000.00 for Defendant Dollar Phone's illegal use of the T1 Trunk Line. Plaintiff was unable to pay for these additional charges and CenturyLink suspended its services causing loss of revenue, brand name damage, attorney's fees and interest on loans obtained to reinstate CenturyLink service and executive resources.

### b.     **Defendant:**

Defendant Dollar Phone Corp. believes that Plaintiff's claim is frivolous and without merit. Dollar Phone Corp. is a New York corporation whose line of business includes, amongst other things, the buying and selling of wholesale and retail international minutes of termination on the worldwide market. Dollar Phone Corp. has been in business since 1999, and since its inception, has entered into over two thousand Carrier Service Agreements with a diverse array of telecommunications providers worldwide, with approximately three hundred of those agreements currently in force and whose providers are actively trading with Dollar Phone Corp.

In 2008, Dollar Phone Corp. entered into a Carrier Service Agreement with a United Kingdom-based telecommunications provider, FM & Company (UK) Limited, and since that time, has been purchasing wholesale international minutes of termination from FM & Company (UK) Limited for resale to other wholesale and retail trading partners with whom Dollar Phone Corp. transacts business. Defendant has in its possession (as does Plaintiff who will be required to disclose such material in its possession should this case reach the discovery phase), evidence that Plaintiff entered into an business arrangement with FM & Company (UK) Limited, whereby

Plaintiff provided their client FM & Company (UK) Limited with a hosted partition softswitch solution and use of Voice over Internet Protocol (VoIP) servers located in Plaintiff's Colorado office for use in its business dealings which include, among other things, the purchasing and selling of wholesale international minutes of termination. Defendant has further evidence in its possession clearly demonstrating that Plaintiff explicitly directed its client FM & Company (UK) Limited to inform its trading partners (including Dollar Phone Corp.) to start directing international voice traffic to particular Internet Protocol (IP) addresses[1] which, while owned by Plaintiff, were being made available to its client FM & Company (UK) Limited for use with its trading partners (including Dollar Phone Corp.) in its international voice termination business.

Defendant Dollar Phone Corp. further disagrees with Plaintiff's disingenuous and misleading narrative as to the facts and circumstances underlying the "dispute" in question in this action. Dollar Phone Corp.'s first awareness of Plaintiff's very existence, as well as the notion that Plaintiff had a possible grievance against *someone*, occurred on July 7, 2016 (notably after the dates in which the alleged actions underlying Plaintiff's claim occurred[2]) when a person identifying himself in some cases as the "GM" and others as the "CEO" of Plaintiff Nationwide Telecom Incorporated mass-emailed multiple email addresses within Dollar Phone Corp. an irate letter of complaint directed towards one of Defendant's clients, the similarly-named but legally and operationally separate business entity Dollar Phone Enterprise, Inc.[3] Defendant's

---

[1] *Nationwide Telecom Incorporated v. Dollar Phone Corp., 16-cv-2495-MSK-MJW, Dkt 1, Page 2 ¶20*

[2] The only unabmbiguous way Plaintiff could have any claim at all against Defendant that would not be considered frivolous would be if Plaintiff had sent Defendant a cease and desist notice advising that there was an impropriety occurring and Defendant disregarded Plaintiff's notification. Instead, Once Defendant had an indication of Plaintiff's alleged grievance against *someone* due to its ongoing transactions with FM & Company (UK) Limited , Plaintiff immediately verified that there was no traffic being sent to Plaintiff's stated IP addresses and curtailed its business dealings with FM & Company (UK) Limited pending resolution of whatever circumstances were manifest.

[3] Defendant originally named Dollar Phone Enterprise, Inc. as the Defendant in this action since Dollar Phone Enterprise, Inc. is licensed to do business in Colorado and maintains a registered agent in the State or Colorado which would subject them to Colorado jurisdiction in this matter, unlike Dollar Phone Corp. who maintains no presence and transacts no business in Colorado. After a series of discussions and communications between Dollar Phone Corp. and Plaintiff's counsel which was a good faith attempt on the part of Dollar Phone Corp. to demonstrate to Plaintiff the erroneous nature of its then-claim against Dollar Phone Corp.'s client Dollar Phone Enterprise, Inc. as well as

subsequent investigation revealed that the Plaintiff's true aggrievement was in fact with the Parties' foreign-based mutual trading partner, FM & Company (UK) Limited.

Defendant Dollar Phone Corp. further takes umbrage with Plaintiff's inaccurate and misleading statements regarding the underlying technical elements of this case. Despite Plaintiff's assertion that Defendant "accessed Plaintiff's T1 Trunk Line" which it then allegedly "loaded with calls from Dollar Phone Corp's Voice Over Internet Protocol ("VoIP") route", in actuality it would be impossible for Defendant (or anyone else) to access "Plaintiff's T1 Trunk Line" without physically being present at Plaintiff's location. A T1 circuit is a physical circuit which "requires two twisted-pair lines, one for each direction"[4] which "is provisioned on copper, fiber and in some instances, microwave radio"[5] and which is provisioned "between one location and a CenturyLink wire center."[6] Furthermore, "A T1 line, similarly can carry up to 24 channels of voice communications simultaneously"[7] or as CenturyLink states, "has the capacity of 24 voice-equivalent channels."[8] Defendant's investigation into the circumstances of this case discovered that in fact this 24 channel capacity limit was vastly exceeded[9] on numerous occasions during the time period in question, suggesting that Plaintiff is either not being truthful as to what type of "Trunk Line" Defendant allegedly "accessed...without authorization" or is not being truthful as to the details concerning Plaintiff's alleged relationship with CenturyLink.

Upon information and belief, Dollar Phone Corp. believes that Plaintiff's real grievance (if any) is with its client FM & Company (UK) Limited. Dollar Phone Corp. hypothesizes that

---

possibly offer to assist Plaintiff in resolving its dispute with the true party with whom it held a grievance, FM & Company (UK) Limited, Plaintiff instead amended its complaint to drop Dollar Phone Enterprise, Inc. as Defendant and now named Dollar Phone Corp. as Defendant.

[4] *http://www.cablinginstall.com/articles/print/volume-7/issue-5/crosstalk-feedback/ask-donna/t1-lines.html*

[5] *http://www.centurylink.com/business/data/private-line-ds1.html*

[6] *Id*

[7] *http://www.excitingip.com/2111/telecom-trunk-lines-difference-between-analog-line-prie1t1-digital-line-gsm-gateway/* "PRI / E1 / T1 Lines"

[8] *http://www.centurylink.com/business/data/private-line-ds1.html*

[9] Dollar Phone Corp. recorded 304 simultaneous call seizures (out of 307 simultaneous call attempts) between 10:00 and 10:15 PM EDT on June 12, 2016 for calls sent to IP address 65.112.165.7 per the instructions of FM & Company (UK) Limited.

Plaintiff believes that the arduousness and expense of litigating against a UK-based entity either in Colorado (where there are no guarantees that it would prevail on a jurisdictional challenge) or in the UK, combined with the knowledge that even were it to obtain a judgment in its benefit in either forum, the chances of actually collecting upon such a judgment are virtually nil. Instead Plaintiff figures it has a much better chance at being able to prevail against a USA-based party, in spite of the fact that the Party whom it is suing is also clearly not subject to the jurisdiction of the District of Colorado, as well as the reality that the facts and evidence do not in any way support any of Plaintiff's claims and allegations. Upon further information and belief, Dollar Phone Corp. has reason to believe that should this case proceed to discovery, it will be shown that Plaintiff's filing of this lawsuit was in fact nothing more than a ruse devised in order to gain a reprieve from paying CenturyLink and/or other of its vendors by way of providing them "proof" that Plaintiff was nothing more than a victim.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. The parties are of diverse citizenship.

## 5. COMPUTATION OF DAMAGES

**Plaintiff's Computation of Damages:**

| | |
|---|---|
| International LongDistance Usage on Qwest Invoice 2016-06-07 | $6,675 |
| International LongDistance Usage on Qwest Invoice 2016-07-07 | $60,135 |
| Late Fees | $1,950 |
| 2 months Communication with Qwest to convince them to avoid suspension Suspension | $5,000 |
| Direct revenue loss from Qwest suspension on Sept 22nd and 23rd | $20,000 |
| Indirect damage to brand name and reputation as a result of main fiber suspension on Sept 22nd and 23rd | $40,000 |
| Hardmoney Loan Interest to pay Qwest Balance | $44,000 |
| executive resources spent to find a remedy | $10,000 |
| Attorney Fees | $15,040 |

7

| | |
|---|---:|
| Further Delay in collection and time spent producing documents | $20,000 |
| | $207,760 |

### Defendant's Computation of Damages:

In the course of conducting its investigation of the circumstances and facts underlying Plaintiff's allegations in this action, Dollar Phone Corp. discovered that Plaintiff's IP addresses have actually been *sending calls towards* Dollar Phone Corp.'s VOIP switch IPs *since before* Dollar Phone Corp. (per the instructions of FM & Company (UK) Limited who in turn had been instructed by Plaintiff to notify Dollar Phone Corp. and other of it's clients to do so), started sending calls towards Plaintiff's IP addresses, and continued sending calls towards Dollar Phone Corp.'s VOIP switch IPs until June 29, 2016, *a full nine days after* calls stopped being sent to Plaintiff's IP addresses.[10] The fact that the Parties do not transact business with each other and that there is no agreement in place which would allow for Nationwide Telecom Incorporated to send international calls to Dollar Phone Corp.'s VOIP Switch IP is undisputed. While Defendant maintains that Plaintiff's complaint and all allegations contained therein are frivolous and is confident that it will be dismissed, Dollar Phone Corp. nevertheless reserves its right to file suit against Nationwide Telecom Incorporated for loading up its VOIP switch IPs with unauthorized international calls, either in the United States District Court for the Eastern District of New York (the proper venue for such an action), or alternatively as a counterclaim in the present action. Additionally, Defendant reserves the right to seek recovery for damages and all expenses incurred as a result of Plaintiff's frivolous action including but not limited to attorney's fees, damage to brand name and reputation, and for the extensive labor and other resources expended defending against this action.

---

[10] *Nationwide Telecom Incorporated. v. Dollar Phone Corp.*, 16-cv-2495-MSK-MJW, "MOTION TO DISMISS OR CHANGE VENUE" Dkt 24 Declaration of Chris Zambito, ¶19

8

## 6. REPORT OF PRECONFERENCE DISCOVERY AND

## MEETING UNDER FED.R.CIV.P. 26(f)

b.  **Date of Rule 26(f) meeting:**

The parties conferred November 11, 2016, December 28, 2016 and January 26, 2017.

c.  **Names of each participant and party he she represented.**

Aimee Bove participated on behalf of Plaintiff Nationwide. Edward (a/k/a Chona) N. Gewirtz participated on behalf of Defendant Dollar Phone Corp.

d.  **Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

The parties discussed an extension of the deadline at the January 26, 2017 Rule 26(f) meeting. Due to the confidential and sensitive information contained in the disclosure documents, Plaintiff will immediately provide disclosures upon entry of the Protective Order. Defendant is awaiting the Court's ruling on its Motion to Dismiss and/or Change Venue to provide disclosures. February 17, 2017 —

**Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

Plaintiff does not propose changes to disclosure requirements.

Defendants pursuant to motion object to jurisdiction therefore at this time disclosures are not appropriate.

e.  **Statement concerning any agreements to conduct informal discovery.**

9

The parties have engaged in informal discovery. Defendant has provided documents and the Parties have filed a proposed protective order that will allow more informal discovery in hopes of reaching early resolution.

    **f.    Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of unified exhibit numbering system.**

The parties intend to use a unified exhibit numbering at trial. They are also actively working to resolve this case informally, and will continue to do so. The parties also agree to cooperate in good faith before filing any motions, and will work to coordinate the scheduling of depositions and other discovery.

    **g.    Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosures or discovery will involve information or records maintained in electronic form.**

The parties believe that the majority of documents in this case will be electronically stored. The volume of electronic information at this stage is manageable without modification to the Scheduling Order.

**Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties have had extensive discussions regarding the facts and claims in this matter. They have also discussed resolving this case but at this time have not reached agreement.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules: ~~None, though~~ Each side may serve 25 Interrogatories ~~the parties will consciously try to limit the number and length of depositions and~~ Each side may take 10 Depositions ~~the use of interrogatories below the presumptive limits.~~ Including experts

b. Limitations which any party proposes to the length of depositions: A limit of 7 hrs per deposition.

c. Limitations which any party proposes on the number of requests for production and/or requests for admission: ~~None, though the parties will consciously try to limit the number of requests for production and requests for admission tendered to the opposing party.~~ 25 each per side

d. Other Planning or Discover Orders: None.

## 9. CASE PLAN AND SCHEDULE

a. Deadline to Join Parties And Amend ~~Plaintiff proposes the following dates:~~ pleadings April 28, 2017.

~~Defendant: All depends on outcome of motion to dismiss~~

~~b.~~ ~~Deadline for Joinder of Parties and Amendment of Pleadings: March 6, 2017~~

b. Discovery Cut-off: ~~August 7, 2017~~ November 30, 2017.

~~c.~~ c. Dispositive Motion Deadline: December ~~30~~ 29, 2017

d. *Expert Witness Disclosure:*

  1. The parties shall identify anticipated fields of expert testimony, if any.

Plaintiff plans to call an expert in the field of telecommunications. Specifically an individual with knowledge of T1 Trunk lines, including the wholesale and end user market considerations. While Defendant maintains that Plaintiff's complaint and all allegations

11

contained therein are frivolous and is confident that it will be dismissed in its entirety, thereby rendering moot the need for expert testimony, Dollar Phone Corp. nevertheless reserves its right to designate an expert or expert(s) for purposes of defending against Plaintiff's claims and allegations or in support of any affirmative claims Dollar Phone Corp. may bring against Nationwide Telecom Incorporated.

2. **Limitations which the parties propose on the use or number of expert witnesses.** 2 Experts per side

~~The parties agree to limit the number of experts to one per subject matter.~~

3. **The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2).** September 1, 2017
~~November 6, 2017.~~

4. **The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2).** ~~Within 30 days after the other party's disclosures.~~ October 2, 2017

e. **Identification of Persons to Be Deposed:** David Abadi, CenturyLink representative, Dollar Phone Corp representative, Dollar Phone Enterprise, Inc. Representative, FM & Company (UK) Limited 30(b)(6) representative, Mohammed Tarkesh Dooz any person identified through discovery necessary to prove Plaintiff's case and any experts designated by the Parties.

By Defendant Dollar Phone Corp.:

Nationwide Telecom Incorporated 30(b)(6) representative

12

Omid Shekarchian

    a/k/a Dave Abadi

    a/k/a Dave Shekarchian

    a/k/a Omid Shekarehian

    a/k/a Omid Shekrachian

    a/k/a Omid Ahmadabadi

    a/k/a Omid Shekarchian Ahmadabadi

    a/k/a/ Omid Sh.

Hamid Hanifi

Mehran Jamali

Iran Communications and Informatics Co 30(b)(6) representative

FM & Company (UK) Limited 30(b)(6) representative

Mohammed Tarkesh Dooz

iBasis, Inc. 30(b)(6) representative

James Di Flamines

CenturyLink, Inc. 30(b)(6) representative

Any person or corporate entity identified through discovery necessary to support Defendant's affirmative defenses and/or counterclaims and actions

Any experts witnesses designated by Plaintiff

f. **Deadline for Interrogatories:** ~~30 days before the discovery cutoff~~ Served by October 27, 2017

g. **Deadline for Requests for Production of Documents and/or Admissions:** ~~30 days before the discovery cut-off~~ Served October 27, 2017

### 10. DATES FOR FURTHER CONFERENCES

13

a. Status conferences will be held in this case at the following dates and times: _None set at this time_

b. A final pretrial conference will be held in this case on _____ at _____ o'clock __m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference. _To be set by Chief Judge Krieger_

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: None.

b. Anticipated length of trial and whether trial is to the court or jury: 3-day trial to the court. — _Defendant has not yet filed An Answer but has filed a Motion To Dismiss. Defendants may request a Jury Trial if its Answer is Filed._

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado: None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

### 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 2nd day of February, 2017.

BY THE COURT:

/s/ Michael J. Watanabe

MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

APPROVED:

By: */s/ Aimee M. Bove*
Aimee M. Bove, #36915
BKN Murray LLP
6795 E. Tennessee Ave, Ste. 330
Denver, Colorado 80224
Phone: (303) 758-5100
Fax: (303) 758-5055

Email: above@bknmurray.com
*ATTORNEY FOR PLAINTIFF NATIONWIDE TELECOM INCORPORATED*

*/s/ Edward N. Gewirtz*
Edward N. Gewirtz
Bronstein, Gewirtz & Grossman, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
(212) 697-7296 (facsimile)
Chona@bgandg.com
*ATTORNEY FOR DEFENDANT DOLLAR PHONE CORP.*