IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-2495-MSK-MJW

**NATIONWIDE TELECOM INCORPORATED,**

    Plaintiff,

v.

**DOLLAR PHONE CORP.,**

    Defendant.

---

**OPINION AND ORDER DENYING MOTION TO DISMISS AND
ALTERNATIVE MOTION TO TRANSFER CASE**

---

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss or Change Venue (**# 20**), the Plaintiff's response (**# 30**), and the Defendant's reply (**# 56**). For the reasons that follow, the Motions are denied.

### I.   JURISDICTION

The Court has subject-matter jurisdiction to hear this case under 28 U.S.C. § 1332(a). The parties dispute whether the Court can exercise personal jurisdiction over the Defendant.

### II.   MATERIAL FACTS[1]

The Court begins with the somewhat skeletal allegations in the Amended Complaint (**#17**), before turning to the additional facts adduced during the briefing on the instant motion.

The Plaintiff, Nationwide Telecom Inc. ("Nationwide"), is a Colorado corporation engaged in the business of providing international telephone services to its clients. As pertinent

---

[1] The Court recounts and accepts as true the well-pled facts alleged in the Amended Complaint (**# 17**). *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

1

here, it does so by buying "wholesale bandwidth" on a "T1 Trunk Line" owned by CenturyLink, and it then resells the bandwidth to its customers, allowing them to make international telephone calls.

Defendant Dollar Phone Corp. ("Dollar Phone") is a business that "sells prepaid calling cards for international and domestic telephone communications." Nationwide alleges that, beginning on or about June 2, 2016, Dollar Phone obtained access to Nationwide's trunk line without Nationwide's permission, and routed calls from Dollar Phone's customers through Nationwide's bandwidth on the trunk line. Subsequently, Dollar Phone refused to compensate Nationwide for its use of Nationwide's trunk line.

Nationwide alleges four claims against Dollar Phone: (i) common-law conversion, presumably under Colorado law, in that Dollar Phone exercised unauthorized dominion over an asset – the bandwidth or trunk line – that belonged to Nationwide; (ii) civil theft in violation of C.R.S. § 18-4-405, on essentially the same facts; (iii) common-law unjust enrichment, presumably under Colorado law, based on the same facts; and (iv) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, in that Dollar Phone accessed a "protected computer" – namely, Nationwide's addresses, switches, servers and Trunk line" – without authorization and by doing so, caused Nationwide to suffer losses in the form of "conducting a damage assessment and restoring the [ ]T1 Trunk Line access," among other things.

As discussed below, both sides submitted additional evidentiary material in support of their briefing on the instant motion to dismiss, and that material fleshes out the Amended Complaint's allegations significantly. Without intending at this time to resolve any factual disputes, the Court observes as follows. Dollar Phone is a New York corporation with its

principal place of business in New York State. It does not maintain any operations of any kind in Colorado under its own name, nor does it own any property in this state. It is one of a constellation of related-but-(nominally) distinct entities that also include Dollar Phone Enterprise ("DPE"), among others. DPE is the entity that sells prepaid calling cards to various customers and outlets. Dollar Phone acquires "minutes of termination" – the phrase is not defined in any witness' affidavits, but appears to refer to timed or metered access to international telecommunications networks owned by others – and sells that access to DPE, allowing DPE's customers to use the calling cards to make telephone calls.

Among the vendors from which Dollar Phone acquires these "minutes of termination" is FM & Company ("FM"), an entity located in the United Kingdom. It appears that, between June 1 and June 20, 2016, DPE's customers made telephone calls using minutes sold by Dollar Phone, and Dollar Phone routed those calls to FM. It appears that, acting upon instructions from FM, Dollar Phone then routed the calls through an Internet Protocol ("IP") address that belonged to Nationwide. *Affidavit of Chris Zambito, Docket #* 24, ¶ 14, 23 ("Dollar Phone Corp. [is] the party who had actually sent calls to Plaintiff's IP addresses, the VoIP traffic at the heart of this dispute"). Over the 20-day period, Dollar Phone apparently routed approximately 157,000 calls through Nationwide's IP address.[2] Thus, it appears to be Dollar Phone's position that although it admittedly routed phone traffic using bandwitdh that belonged to Nationwide, it did so at the direction of FM.

---

[2] Mr. Zambito's discursive, technical, and needlessly argumentative affidavit is somewhat difficult to parse. It may be that Dollar Phone actually routed more than 168,000 calls through Nationwide's lines instead. *Id*, ¶ 16.

In the instant motion, Dollar Phone moves to dismiss **(# 20)** the claims against it for lack of personal jurisdiction and for improper venue. Alternatively, Dollar Phone requests that this action be transferred to the Eastern District of New York.

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**A. Legal Standard**

When the Court's jurisdiction over a defendant is challenged pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Omi Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Courts may elect to resolve the jurisdictional question immediately, by conducting an evidentiary hearing on the issue, or they may defer resolution of the jurisdictional question until trial, requiring the plaintiff to make only a *prima facie* showing of jurisdiction at the pretrial phase. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The Court may receive affidavits and other evidentiary material to assist in resolving the issue, but it must resolve any disputed facts in the light most favorable to the plaintiff. *Id.*

Normally, the jurisdictional inquiry comprises two components. The plaintiff must show: (i) whether the laws of the forum state confer jurisdiction by authorizing service upon the defendant; and (ii) whether the exercise of such jurisdiction comports with the principles of due process. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). However, in Colorado, that inquiry is short-circuited, insofar as Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause." *Id.* Thus, the inquiry simply becomes one of whether due process principles would be satisfied by the exercise of personal jurisdiction.

The due process inquiry also has two components. First, the Court must determine whether the Defendant has "such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Id.* Second, the Court considers whether the exercise of personal jurisdiction in the circumstances presented "offends traditional notions of fair play and substantial justice." *Id.* The "minimum contacts" analysis considers whether the defendant is susceptible to either "general jurisdiction" or "specific jurisdiction" in the forum state. *See American Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016). General jurisdiction resides in the location that the defendant is "at home" – generally, a corporation's state of incorporation and its principal place of business – and in certain "exceptional" cases, in other locations where the defendant's connections are similarly substantial. *BNSF Ry. Co. v. Tyrell*, 137 S.Ct. 1549, 1558 (2017). Specific jurisdiction is a more flexible concept, examining the nature and extent of the defendant's contacts with the forum and whether the legal claims in suit arise out of those contacts. *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1780 (2017). Specific jurisdiction arises when the defendant engages in "an activity or occurrence that takes place in the forum state," from which the claims at issue arise. *Id.* That activity must be purposefully directed by the defendant towards the state, rather than being random or fortuitous or the result of the actions of another, and the harmful effects of that conduct must typically be felt in the forum state. *Anzures v. Flagship Restaurant Group*, 819 F.3d 1277, 1280 (10th Cir. 2016).

The "fair play and substantial justice" analysis is a "fact-specific" inquiry on which the defendant bears the burden of proof. *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). The defendant must present a "compelling case," showing considerations that "would render jurisdiction unreasonable." *Id.* Such considerations include: (i) the burden

on the defendant of litigating in the forum, (ii) the forum state's interest in resolving the dispute, (iii) the plaintiff's interest in receiving convenient and effective relief, (iv) the judicial system's interest in maintaining the most efficient resolution of controversies, and (v) the shared interest of the several states in furthering fundamental social policies. *Id.*

**B. Analysis**

Nationwide offers a fairly perfunctory argument that Dollar Phone is subject to general jurisdiction in Colorado. That argument takes the following form: DPE has significant contacts in Colorado, insofar as its calling cards can be purchased "throughout Colorado."[3] Dollar Phone and DPE are, functionally, the same entity, a fact Nationwide attempts to demonstrate by noting that they share a mailing address, that Dollar Phone's trademark logo appears on DPE's calling cards, and that Dollar Phone's website allows customers to buy calling cards through it (another factual assertion for which Nationwide does not provide supporting evidence). From these strands, Nationwide appears to argue that the Court should thus disregard the nominal corporate forms of DPE and Dollar Phone, treat them as being a single unified entity, and thus deem Dollar Phone as being present in Colorado to the same extent that DPE is.

This Court need not entertain this argument with great attention. Besides being unsupported factually, it fails to present the sort of thorough, fact-intensive analysis that is necessary when parties seek to set aside corporate formalities and deem one entity to be the mere alter-ego of another. *See generally Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1220-22 (10th Cir. 1997). Accordingly, the Court finds that Nationwide fails to make a *prima facie* showing that this Court has general jurisdiction over Dollar Phone.

---

[3] Notably, Nationwide offers no affidavit or other evidence to support this assertion that is so crucial to its argument.

Turning to the question of specific jurisdiction, it is clear that Dollar Phone had at least one specific contact with the State of Colorado - beginning on June 1, 2016, it began purposefully directing its customers' telephone traffic to an IP address owned by Nationwide. An IP address is, by definition, a virtual one, but it appears that electronic access to these addresses are controlled by a physical piece of equipment known as a "wholesale switch." *Docket* # 17, ¶ 19. Neither side has identified the physical location of the wholesale switch owned by Nationwide and accessed by Dollar Phone, but the Court construes the Amended Complaint's allegation that "Nationwide's business is within the territorial boundaries of . . . Colorado" to assert that Nationwide maintains equipment of this type in Colorado. Thus, it appears that Dollar Phone made a form of electronic contact with property belonging to Nationwide in Colorado.

The contact was, by Dollar Phone's own admission, purposeful (albeit allegedly done at the direction of FM). Nothing in the record appears to suggest that Dollar Phone could not have ascertained the physical location where that contact would be processed; put differently, Mr. Zambito was able to ascertain, after the fact, that the IP address was associated with Nationwide in Colorado, and nothing suggests that Dollar Phone could not have performed the same investigation prior to June 2016.

There is no question that the injuries that resulted from Dollar Phone's actions have been felt by Nationwide in Colorado, as Nationwide has been billed by CenturyLink for the bandwidth that Dollar Phone used and did not pay for. It is undisputed that Nationwide's claims here arise directly from Dollar Phone having routed its telephone traffic onto Nationwide's trunk line in Colorado. Thus, all of the requisite elements of specific jurisdiction are present. Accordingly,

the Court finds that Nationwide has made at least a *prima facie* showing that Dollar Phone is subject to specific jurisdiction in the State of Colorado.

Turning to the "fair play and substantial justice" inquiry, the Court finds that Dollar Phone has not articulated any meaningful reasons why the exercise of jurisdiction over it in Colorado would be unreasonable. Certainly, Dollar Phone will incur costs and inconvenience in traveling to Colorado when necessary in the course of this action, but those burdens are commensurate with Colorado's interest in ensuring that its citizens, like Nationwide, are able to obtain convenient and effective relief for the tortious acts Dollar Phone allegedly committed in Colorado. It is reasonable to expect that a substantial amount of evidence pertinent to Nationwide's claims, including its own records of traffic over its network and financial data reflecting its losses, would be found in Colorado, even if other pertinent evidence would be located in New York or the U.K. In such circumstances, the Court cannot say that Colorado's exercise of jurisdiction over Dollar Phone offends notions of fair play and substantial justice.

Accordingly, Dollar Phone's motion to dismiss for lack of jurisdiction is denied.

## IV.  VENUE

**A.  Dismissal**

Dollar Phone makes an abbreviated argument that the claims against it should be dismissed due to improper venue under 28 U.S.C. § 1406(a). That statute permits a court to dismiss an action if venue is improper (although it also authorizes a transfer of venue under 28 U.S.C. § 1404 as an alternative remedy).

28 U.S.C. § 1391(b) sets forth the appropriate venues for a given action. Section 1391(b)(2) provides that venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Given the preceding discussion, it is

clear that a substantial portion of the events giving rise to Nationwide's claims – Dollar Phone's unauthorized use of Nationwide's trunk line – occurred in Colorado. Accordingly, venue is proper in this Court and Dollar Phone's motion to dismiss for improper venue is denied.

Alternatively, Dollar Phone requests that the Court transfer venue in this case to the Eastern District of New York, where Dollar Phone is domiciled. Dollar Phone bears the burden of establishing the inconvenience of proceeding in Colorado outweighs the strong presumption that Nationwide's choice of forum is appropriate. *See Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). Ordinarily, the Court considers numerous factors, including: (1) the plaintiff's choice of forum[4]; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp. v. Country Chrysler Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

As to the factors, Dollar Phone has offered only conclusory assertions. For example, it states that "all evidence and sources of proof regarding Defendant's routing of this traffic is in

---

[4] The forum chosen by the plaintiff is given great weight, and will only be disturbed based on a strong showing of inconvenience by the defendant. *Scheidt v. Klein*, 956 F.2d at 965 (10th Cir. 1992). However, no such deference is afforded the plaintiff's choice when the chosen forum is one in which the defendant does business, but which otherwise has no connection to the case. *Cargill Inc. v. Prudential Ins. Co. of Am.*, 920 F. Supp. 144, 147 (D. Colo. 1996). In addressing the convenience of witnesses, the Court may consider whether remote witnesses have indicated a willingness to voluntarily appear to testify before this Court, and whether the trial testimony is capable of presentation by video deposition or videoconference. *See Longo v. Wal-Mart Stores Inc.*, 79 F. Supp. 2d 169, 172 (E.D.N.Y. 1999).

the New York area," and that "it would be extremely inconvenient and expensive for critical witnesses to travel to Colorado in connection with this litigation."  Dollar Phone has not addressed the significant weight that is given to Nationwide's choice of forum, nor has it acknowledged the significance of various records and other items of evidence that will be in Nationwide's possession in Colorado.  The fact that three of Nationwide's four causes of action turn on Colorado law is another factor weighing in favor of this Court retaining the case.  Certainly, when entities in two different states wind up in court, one side will be inconvenienced in having to travel to the other side's forum, but Dollar Phone offers no meaningful justification as to why Nationwide should be the party to bear the inevitable travel costs instead of itself.  In any event, the Court is confident that in this age of videoconferencing and electronic transmission of data, the incidental costs of transcontinental litigation can be effectively managed by both sides.

Accordingly, the Court finds that Dollar Phone has failed to carry its burden of showing the appropriateness of a transfer of venue, and thus, its motion is denied.

## V.  CONCLUSION

For the foregoing reasons, Dollar Phone's Motion to Dismiss for lack of personal jurisdiction and improper venue, and alternative Motion to Transfer (**# 20**) are **DENIED**.

Dated this 18th day of September, 2017.

**BY THE COURT:**

*Marcia S. Krieger*
_____
Marcia S. Krieger
United States District Court